EMPLOYMENT SECURITY COMMISSION *v.* PATT.

1. UNEMPLOYMENT COMPENSATION—CONTRIBUTIONS—ENFORCEABILITY.
   Declaration of policy in Michigan employment security act makes it clear that the legislature intended to establish a strictly enforceable system of periodic payments by employers that might not be escaped (CL ·1948, § 421.2).

2. TAXATION—DEFINITION OF TAX.
   A tax is an enforced contribution, exacted pursuant to legislative authority.

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 4.
[2] 51 Am Jur, Taxation § 3.
[3-5] 9 Am Jur 2d, Bankruptcy § 779.
[6] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

3. UNEMPLOYMENT COMPENSATION—CONTRIBUTIONS—TAX.
   Employer contributions required by Michigan employment security act *held,* a tax within the meaning of section of the bankruptcy act that is excepted from discharge of bankruptcy (11 USC, § 35).

4. SAME—CONTRIBUTIONS—DISCHARGE IN BANKRUPTCY.
   Contributions owed by employer to state pursuant to employment security act *held,* not barred from collection by a subsequent discharge in bankruptcy (11 USC § 35; CL 1948, § 421.2).

5. BANKRUPTCY—DISCHARGE—TAXATION.
   An involuntary exaction, levied for a governmental or public purpose, is a tax within the purview of the bankruptcy act that is not discharged thereunder (11 USC, § 35).

6. COSTS—PUBLIC QUESTION.
   No costs are allowed on appeal from lower court determination that employer contributions required under Michigan employment security act are a tax, hence, not dischargeable in bankruptcy, a public question being involved (11 USC, § 35; CL 1948, § 421.2).

Appeal from Wayne; Weideman (Carl M.), J. Submitted Division 1 June 1, 1966, at Detroit. (Docket No. 1,462.) Decided September 13, 1966.

Declaration by the Michigan Employment Security Commission against Fred Patt for unpaid unemployment compensation contributions as employer. Default judgment for plaintiff. Defendant moved to restrain plaintiff from collecting judgment on ground of intervening discharge in bankruptcy. Motion dismissed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard I. Rubin,* Assistant Attorney General, for plaintiff.

*Rosin & Kobel,* for defendant.

Fitzgerald, J. The appellant, Fred Patt, was an employer during the years 1955, 1956 and 1957 and subject to the provisions of the Michigan employment security Act (CL 1948, § 421.1 *et seq.,* as amended [Stat Ann 1960 Rev § 17.501 *et seq.*]). During that period he did not pay the unemployment contributions called for by that act and in 1959 an action was started against him by the Michigan employment security commission in the circuit court for the county of Wayne.

Judgment by default was rendered against him for his contributions under the act in the amount of $4,619.28, representing delinquent contributions, statutory damages, interest, and court costs.

Subsequently, the defendant filed a voluntary petition in bankruptcy and in 1964 was granted a discharge under the applicable provisions of the bankruptcy act. In 1965, the MESC garnisheed defendant's employer, seeking to collect its judgment of 1959. Defendant filed a motion to restrain this action and a temporary order was issued preventing the commission from taking action to enforce collection of its judgment. On hearing, the Wayne county circuit court entered an order dissolving the temporary restraining order and dismissing defendant Patt's motion.

In the order, it was stated:

"The court therefore adopts the position of the Michigan employment security commission that the so-called contribution was a tax lawfully levied against the respondent Patt; that it was not discharged in bankruptcy, nor has the statute of limitations run against the collection of the debt."

On appeal, the issue is whether the word "contribution" under the provisions of the employment security act, *supra,* may be equated with the word "tax".

The question before us revolves narrowly around the applicability of section 17 of the bankruptcy act (11 USC § 35) which provides as follows:

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, *except such as (1) are due as a tax levied by the United States, or any state, county, district, or municipality.*" (Emphasis supplied.)

In general, defendant claims that the moneys paid or payable to the State under the employment security act are not taxes undischargeable under the bankruptcy act, *supra.* Instead, he states that such moneys are nothing more than what is expressed in the statute, *i.e.,* "contributions", and as such are not taxes and were discharged in the bankruptcy proceedings.

That this question has not been raised before seems unusual. The fact that a claim of appeal was filed in this case can perhaps be ascribed to the equitable argument cited by defendant that, "Actually, the State of Michigan, through the employment security commission, was required to pay to unemployed persons formerly in the employ of defendant, less than $200 chargeable to the account of defendant under the act." There ensues a resounding silence as to whether defendant might or might not be liable for this sum.

It is true that the word "tax" is conspicuously absent from the provisions of the employment security act, but it is also true that the word most frequently used therein, "contribution", bears minute examination before it can be said that it is not a tax within the purview of the bankruptcy act.

A brief examination of the employment security act reveals the intent of the legislature at the time of its passage. The enacting section thereof states

specifically, "To levy and provide for contributions from employers." Section 2, the declaration of policy, states that:

"The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequence of relief assistance, is for the public good, and the general welfare of the people of this State." *

Such a broad and definitive statement of policy by our legislature scarcely lends itself to the interpretation that they intended anything but a strictly enforceable system of periodic payments by employers that might not be escaped.

That the employment security act was a proper exercise of legislative powers, and its provisions constitutional, was a battle fought some time ago, and the issue is a closed one. As stated by Mr. Justice Stone in *Carmichael* v. *Southern Coal & Coke Co.* (1937), 301 US 495 (57 S Ct 868, 81 L ed 1245), in what was probably the most exhaustive examination of a State's unemployment compensation act (Alabama):

"While the particular name which a State court or legislature may give to a money payment commanded by its statute is not controlling here when its constitutionality is in question, * * * we see no reason to doubt that the present statute is an exertion of the taxing power of the State."

More important than this, however, is the statement, "The end being legitimate, the means is for the legislature to choose." That is precisely what we have before us. If the legislature in 1936 decided

* CL 1948, § 421.2 (Stat Ann 1960 Rev § 17.502).—REPORTER.

that the word "tax" was odious and emotion-laden, and used in place thereof the word "contribution," it is clear that they intended more than a simple voluntary contribution. Rather, they created an enforceable contribution, one which could make an employment security fund a predictable, stable accumulation which might be utilized to remedy the evils set forth in their declaration of policy.

Further evidence of this is gained from the enacting section wherein the term *"to levy* and provide for contributions from employers; *to provide for the collection* of such contributions" is used.

To arrive at an ultimate disposition of this matter, we find no better touchstone than the words of the Court in *Re Oshkosh Foundry Co.* (ED Wis 1939), 28 F Supp 412, wherein the associated question of priorities under the bankruptcy act was considered. There it was said:

"Although the legislature did not designate the contributions as a tax, nevertheless the compulsory payments made for a public purpose come within a definition of a tax as is stated in 61 CJ 68: '* * * the essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority.'"

The same Court sagely observed that a careful examination of the statute before it, in that instance the Wisconsin unemployment compensation act, yielded the conclusion that:

"The framers of this legislation were very apprehensive that a tax levied for unemployment relief might be declared unconstitutional by the courts. They went to great lengths to avoid designating as a tax the payments to be made by employers. The word 'tax' does not appear anywhere in the chapter with reference to the compulsory payments which employers are required to make."

Such is the case with the statute before us. Regardless of the terminology used, an involuntary exaction, levied for a governmental or public purpose, can be held to be nothing other than a tax within the purview of the Federal bankruptcy act. The right of the State to collect such tax was duly protected by the congress in the bankruptcy act.

The employer contributions which must be made pursuant to the Michigan employment security act are a tax within the meaning of section 17 of the bankruptcy act.

Judgment affirmed. No costs, a public question being involved.

J. H. GILLIS, P. J., and QUINN, J., concurred.