In the Matter of PINE KNOB INVEST-MENT, a Michigan co-partnership,

In re PINE KNOB COUNTRY CLUB, a Michigan corporation,

In re PINE KNOB SKI RESORT, a Michigan corporation,

In re MANSIONS, INC., a Michigan corporation, Debtors.

Bankruptcy Nos. 80–00872–W to 80–00875–W.

United States Bankruptcy Court, E. D. Michigan, S. D.

March 26, 1982.

Arnold S. Schafer, Detroit, Mich., for Pine Knob.

Patricia L. Sherrod, Asst. Atty. Gen., Detroit, Mich., for Michigan Employment Sec. Comn.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This matter came before the Court upon the motion of the Michigan Employment Security Commission (Commission), an agency of the state government of Michigan, requesting that this Court determine the rates of contribution under the Michigan Employment Security Act (Act) for the three corporations and one partnership involved in this consolidated proceeding under Chapter 11 of the Bankruptcy Code.

The debtor entities operate a recreational complex comprising a ski resort, golf course, and associated facilities at a site located north of the City of Detroit. The Commission is a state agency charged with the collection and disbursement of what is generally described as unemployment compensation. As a part of this function, the Commission is authorized to determine whether an entity is required to contribute to the Michigan unemployment system and, if so, the rate at which any such contribution is to be made. M.S.A. § 17.514, M.C.L. § 421.14; M.S.A. § 17.520, M.C.L. § 421.19.

The present controversy arose following the filing of proofs of claim by the Commission claiming certain amounts owing to it as a result of the post-petition activities of the debtor entities operating the business as debtors in possession. These claims reflect the Commission's determination of contribution rates for the debtor entities for the fiscal year beginning in 1980 and the subsequent application of these rates to wages paid by them as debtors in possession.

The corporations and partnership have objected to the claims filed, alleging that the rates determined by the Commission are improper as applied to wages paid by the debtors in possession. In essence, the debtors' position is that a debtor in possession, as a legal entity distinct from a debtor, is entitled to separate tax treatment. In this case the debtors argue that they are entitled to the tax rate applicable to an employer during its first two years of operation, 2.7%. They further allege that Congress intended to free reorganizing debtors from such burdens and urge that the proper implementation of this policy is a determination that they be treated as new employees under the Employment Security Act. As the rates of contribution established by the Commission are considerably higher than this rate, the debtors have requested relief from this Court in the form of a determination that they are liable for contributions only at the 2.7% rate.

■ The initial inquiry must be whether this Court has the jurisdiction to make the determination requested by the debtors. Section 505(a)(1) of the Bankruptcy Reform Act of 1978 reads:

"(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

From that section, it is clear that this Court does have the jurisdiction to hear and determine the amount and legality of the taxes incurred by a debtor or his estate following the filing of a petition under Title 11.

■ Although the Bankruptcy Court is given the power under § 505(a) to deter-

mine the amount and legality of taxes, this power is tempered by the principle that in determining the legality of a state tax, the bankruptcy courts must give full faith and credit to the state law upon which the tax is based. *Arkansas Corporation Commission v. Thompson, Trustee*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244.

■ Contributions required under the Employment Security Act are taxes. *Employment Security Commission v. Patt*, 4 Mich.App. 228, 144 N.W.2d 663 (1966); *State of Missouri v. Gleick*, 135 F.2d 134 (8th Cir. 1943). Michigan law provides that the trustee in bankruptcy is classified as an "employing unit" subject to the Employment Security Act. M.S.A. § 17.542; M.C.L. § 421.40. Under the Act, a transfer of the assets of a business to another employing unit transfers all or part of that business' rating account to the new employer. M.S.A. § 17.524; M.C.L. § 421.22. Where the transfer involves more than 75% of the assets of the business, the rating account transfers intact if the transferee had no rate of contribution applicable to it before the transfer. M.S.A. § 17.524(e)(2); M.C.L. § 421.22(e)(2).

The statutory provisions mentioned above are not affected by the debtors' status as debtors in possession under Title 11. With certain exceptions not relevant here, a debtor in possession has the same duties as a trustee. His duties include withholding, collection and payment of state and local taxes and the filing of tax returns required by state or local law. The tax provisions of the Code were intended to eliminate disputes which had arisen regarding whether the estate of a debtor in bankruptcy was to be treated as a separate entity for tax purposes. As adopted, they establish that the estate of a corporation or partnership is not a separate entity but is to be treated as though the case had not been commenced. This is consistent with pre-Code law and congressional intent as expressed in the legislative history. *Cf.* The Bankruptcy Tax Act of 1980, § 1399.

■ The debtors do not contest that their post-petition operations are subject to the Act. Their request is for a determination of its legality as applied to their estates. Nothing in the cases cited by the debtors nor the fact that a high rate was determined under the statutory formula suggest a different treatment of the claims filed by the Commission. The obligation to contribute to the unemployment compensation system to which the debtors are subject is not an executory contract or an unexpired lease which can be rejected as part of a reorganization. It is a tax, imposed by state law, on certain sorts of business activity. There is no power to reject tax obligations, burdensome or otherwise. The thrust of the language of the Code and that of the Bankruptcy Tax Act is clear. The tax posture of corporate and partnership debtors, with regard to taxes of the sort at issue here, while governed by those statutes, is intended to continue as though a case under Chapter 11 had not been commenced.

■ From these findings it is concluded that the filing of a petition under Chapter 11, while affording certain rights, does not entitle the estates of the debtors to the contribution rate for new employers established by state law. Nor should the state statute be construed to effect this result. While the filing has created an estate for administrative purposes, the entities have retained possession and control of their assets and are conducting the businesses in which they are engaged prior to commencement of their cases while they attempt reorganization. As such, they should be treated as successor employers for the purposes of determining what contribution rate is applicable to their activities.

Where a successor employer acquires the assets of a business and continues its operations, the rating account of that business will transfer to that successor employer. While such a result may be onerous to the debtors, it is only so as a result of the operation of a statutory formula applied without regard to their status under Title 11. While it is clearly the intent of Congress that tax laws should not hinder the bankruptcy process, their continued operation and applicability after filing a case under Chapter 11 is contemplated by the

Code and cannot be said to impose an unfair or inequitable burden upon the debtor. At the time of its adoption the tax provisions of the Code were subjected to close scrutiny and extensively debated. The statute which emerged evidences no intention to allow this Court to alter tax rates established by a correct application of state law in the manner requested by the debtors. In the absence of such authorization, their request must result in a determination that the rate set by the Commission should continue in effect unless altered in accordance with the procedures provided in the Employment Security Act. The Commission may therefore proceed in accordance with § 505(c). The debtors' objections are dismissed.

An appropriate order may be submitted.

So ordered.