**In re BUILDING TECHNOLOGIES CORPORATION, Debtor.**

**BUILDING TECHNOLOGIES CORPORATION,**
**Plaintiff,**

v.

**CITY OF HANNIBAL, et al., Defendants.**

Bankruptcy No. 1–91–05644.
Adv. No. 93–1042.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 25, 1994.

Richard D. Nelson, Cincinnati, OH, for Hannibal and Ralls County.

Philomena S. Ashdown, Cincinnati, OH, for Building Technologies.

Richard A. Levy, Chicago, IL, Eric C. Okerson, Cincinnati, OH, for SPBC.

Ronald E. Gold, Cincinnati, OH, for Bross Trucking.

Stephen D. Lerner, Cincinnati, OH, for Armco Steel and U.S. Steel.

Joanne M. Schreiner, Cincinnati, OH, for Hubbel Steel.

### DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BURTON PERLMAN, Chief Judge.

In this adversary proceeding, plaintiff/debtor pursues an adjudication resolving competing interests in a fund in its hands, the source of which was a sale of real property assets located in Missouri. Now before the court is plaintiff's motion for partial summary judgment. Defendant Security Pacific Business Credit, Inc. ("SPBC") filed a memorandum in support of debtor's motion. Defendants City of Hannibal ("City") and Ralls County, Missouri ("Ralls County") together filed a memorandum in opposition to debtor's motion for partial summary judgment.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(K).

Debtor filed its petition in bankruptcy on September 19, 1991. By order entered March 2, 1993, this court granted debtor's motion to sell certain of its real property and equipment, located in the City of Hannibal, Ralls County, Missouri (the "Missouri Assets"). Pursuant to the order, the property was sold free and clear of all liens, claims, and encumbrances, which attached to the sale proceeds according to their respective priorities. These are the sale proceeds to which we hereafter refer.

In Count I of the Complaint, debtor alleges that on May 26, 1989, debtor obtained a loan from SPBC, which was secured by a first and best lien on all of debtor's assets, including the Missouri Assets. SPBC's first priority lien is claimed pursuant to a deed and assignment of rents that were recorded on June 6, 1989, and two UCC financing statements that were filed on June 9, 1989 and December 4, 1989, respectively. In addition, pursuant to this court's order authorizing postpetition financing, debtor borrowed funds from SPBC postpetition, and granted SPBC a postpetition lien on all of debtor's assets, including the Missouri Assets, with superpriority status under § 364(c)(1). With respect to Count I, debtor requests that this court find that SPBC is secured by a first and best lien on the Missouri Assets, and that it is entitled to receive all of the sale proceeds, which are less than the aggregate value of all liens asserted on the Missouri Assets.[1]

In Counts II and III, debtor alleges that Ralls County claims a lien for real estate taxes in the amount of $134,189.53 for the years 1990, 1991, and 1992, which it asserts should be paid from the sale proceeds of the Missouri Assets prior to any other liens, including that of SPBC. The City claims a first priority lien for real estate taxes in the amount of $31,068.72 for the years 1991 and 1992. Included in the amounts claimed by the City and Ralls County are interest and penalties assessed for the years 1990 through 1992. Debtor requests a determination that the real estate taxes that became due after debtor's petition was filed are subject to SPBC's superpriority lien and therefore are not secured claims, and that no liens could be created or perfected postpetition. Although debtor does not dispute that the City and Ralls County have valid liens for prepetition taxes, debtor requests a determination that the assessment value used to calculate the liens was excessive and must be recalculated before such taxes are paid from the sale proceeds.

Finally, as to Count IV, debtor requests that the court find that all other liens of the remaining named defendants are subject to SPBC's lien or are unsecured.

■ In its present motion for partial summary judgment, plaintiff/debtor argues first that SPBC has a valid properly perfected lien in the Missouri Assets. This contention is not contested, and plaintiff is entitled to summary judgment on this point. Next, plaintiff says that the lien of SPBC is prior and superior to the liens of USX Steel, Armco Steel, Hubbel Steel and Bross Trucking, Inc. Again, this position is uncontested, and plaintiff is entitled to summary judgment on this score as well.

■ 1. *Postpetition Taxes.* The first issue with which we deal is plaintiff's contention that tax claims arising or accruing postpetition are subordinate to the claim of SPBC. In its motion, plaintiff says that it does not dispute that the City and Ralls County have valid liens for prepetition real estate taxes which may be paid from the sales proceeds prior to payment of SPBC, but it does dispute that the City and Ralls County are entitled to be paid for postpetition taxes out of the sales proceeds.

The present bankruptcy was filed September 19, 1991. In its motion, plaintiff says that Ralls County claims a lien for real estate taxes owed by the plaintiff for the years 1990, 1991 and 1992, in the approximate amount of $134,189.53 as of April 30, 1993, and that Ralls County asserts that its lien should be paid from the sale proceeds before any distribution to SPBC. Similarly, plaintiff says in its motion that the City asserts a lien for real estate taxes for the years 1991 and 1992 in the approximate amount of $31,068.72 as of April 30, 1993, and that the City

1. In its motion for summary judgment, debtor states that after its Complaint was filed, the property was sold for $750,000.00, and that SPBC asserts a lien in the amount of $140,036,340.71.

claims that its lien should be paid from the sale proceeds prior to distribution to SPBC. On this motion, the City and Ralls County do not dispute that they are claiming to be paid taxes out of the sale proceeds in the amounts stated by plaintiff in its motion, and that such payments are on account of postpetition taxes. It is apparent from a review of plaintiff's motion that, since the bankruptcy case was filed September 19, 1991, what is in issue here are taxes which became liens on January 1, 1992, and January 1, 1993, that is, the 1992 and 1993 taxes. Impliedly, plaintiff concedes that earlier accruing taxes became liens pre-bankruptcy and plaintiff agrees that payment for such liens should be made out of the sale proceeds. It is the position of plaintiff on this motion that the City and Ralls County could not acquire a valid lien postpetition because to do so would transgress against the automatic stay of § 362. Any lien acquired while the automatic stay is in place is invalid.

The City and Ralls County respond that § 362 is not the whole story. They refer us to § 546(b) which insulates from attack, such as the one that plaintiff is here making, perfection of an interest in property postpetition by "an entity that acquires rights in such property before the date of such perfection." The City and Ralls County contend that they had an interest in property prepetition which was perfected postpetition in accord with § 546(b), because the state has an "ever-present" interest in real estate which was perfected by the acquisition of the lien post-petition.

These respective positions are derived from specific cases to which we now refer. The City and Ralls County find support for their position in In re Maryland Glass Corp., 723 F.2d 1138 (4th Cir.1983). There is no question that the City and Ralls County correctly portray the holding of Maryland Glass. But this court must take into consideration that, as pointed out by plaintiff, there is substantial contrary authority, all of which reject the basic premise of Maryland Glass, that a state has an "ever-present" interest in real property, though the several cases themselves are not in complete agreement otherwise. In In re Parr Meadows Racing Ass'n, 880 F.2d 1540 (2nd Cir.1989), cert. denied, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953

(1990), the principal asset of the debtors was a race track which was sold after the Chapter 11 case was converted. Bankruptcy had been filed no later than October 4, 1979. Taxes had not been paid for six of the seven tax years between 1978–79, and 1984–85. In Parr Meadows, the secured creditors contested the priority of all taxes after tax for the 1978–79 year, which admittedly was prepetition. While the court in Parr Meadows rejected the analysis of the Fourth Circuit in Maryland Glass, it did find that a protectable tax interest could arise prepetition, in this instance on the "tax status date" provided for under the law of New York. Section 546(b) protected the tax claimant with respect to such a tax liability though the lien thereon was not perfected until after the bankruptcy petition was filed. The Parr Meadows court held that except for such a claim where the interest in property, that is, the tax liability, was fixed prior to the bankruptcy filing, tax liability lien acquisition was barred by the automatic stay provision of § 362.

In Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp., 884 F.2d 80 (3rd Cir.1989), the Third Circuit also rejected the concept of Maryland Glass of an "ever-present" interest in property, that is, that there is no beginning date for the taxing authority's interest in order that it be protected. The court further accepted the proposition in Parr Meadows that the automatic stay could bar the acquisition of a tax lien postpetition. The Equibank court, however, did not reach the ultimate question of whether the specific tax liability there in question was barred or allowed. But in Makoroff v. City of Lockport, 916 F.2d 890 (3rd Cir.1990), cert. denied, 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991), the Third Circuit made itself clear on this point. In Makoroff, the Third Circuit, like the court in Parr Meadows, was dealing with real estate located in the state of New York. In Makoroff, the Third Circuit reaffirmed its position stated in Equibank rejecting the notion of the Fourth Circuit of an "ever-present" state interest which could be perfected by a lien postpetition. The Makoroff court, however, disagreed with the Parr Meadows court as to whether a taxing authority could successfully

take priority over a first lien on the basis of a tax liability fixed pre-petition, but only perfected postpetition. The *Makoroff* court reached the conclusion that it was only the fixing of a lien which would avail a taxing authority, and regardless of what happened prepetition if the taxing authority was depending upon a lien which arose only postpetition, the taxing authority could not succeed, for the automatic stay prevented the acquisition of a valid lien by the taxing authority postpetition. The final case to which we refer is *In re Glasply Marine Indus., Inc.,* 971 F.2d 391 (9th Cir.1992), in which the Ninth Circuit also rejected the "ever-present" interest concept of the *Maryland Glass* court and barred the claim of a taxing authority which depended upon accrual of a tax claim postpetition.

██ Our circuit, the Sixth Circuit, has not spoken on the present issue. This court is persuaded that the view of the Second, Third and Ninth Circuits is correct, while that of the Fourth Circuit is incorrect with respect to the existence of an "ever-present" interest on the part of a state in real property within that state as a basis for validating a postpetition tax lien pursuant to § 546(b). The basis for this conclusion was stated in *Parr Meadows:*

> On the other hand, we are also unpersuaded by the fourth circuit's view that the county has an interest in the property that is "ever-present" because of its inherent governmental authority and control over the land. *Maryland National Bank [v. Mayor and City Council of Baltimore],* 723 F.2d [1138] at 1142 [ (4th Cir.1983) ]. Statutory exceptions to the automatic stay are to be interpreted narrowly and in accordance with its underlying rationale. *In re Stringer,* 847 F.2d 549, 552 (9th Cir. 1988). That rationale—that all creditors of a bankrupt estate, including local governments, receive fair and equal treatment— would be effectively destroyed if, for every year of the bankruptcy proceeding, the county were granted priority over all secured creditors and allowed to collect on its tax liens as they attach. *See In re Guterl Special Steel Corp.,* 95 B.R. 370 (Bkrtcy.W.D.Pa.1989).

880 F.2d at 1547.

In their response to the present motion, the City and Ralls County rely entirely upon *Maryland Glass,* urging this court to accept the theory of an "ever-present" interest in real property on the part of a state. As we have indicated, we are persuaded that this theory is invalid and inconsistent with the bankruptcy laws of the United States. In the absence of any further argument, or evidence to support a further argument, we are left with a record showing no basis for priority of the tax lien of the City and Ralls County, which arose postpetition, and whose validity is barred by the automatic stay of § 362. Plaintiff is therefore entitled to succeed on its motion for summary judgment insofar as it contends that the City and Ralls County are not entitled to be paid on postpetition tax claims out of the sale proceeds.

Having reached the foregoing conclusion, we will not, and it is to be noted that the City and Ralls County did not, remark upon the alternative position urged by plaintiff. That alternative position is that the order entitled "Final Order (A) Under 11 U.S.C. § 364(c) Authorizing the Debtor-in-possession to Obtain Credit on a Secured Basis Pursuant to a Debtor-in-possession Credit Facility and (B) Approving Related Loan Documents," entered October 31, 1991, precludes the City and Ralls County from asserting a prior tax lien to the interest of SPBC.

██ *2. Tax Amount.* Plaintiff in its present motion for summary judgment also seeks relief in respect to the amount of prepetition taxes owed to the City and Ralls County. More specifically, plaintiff requests that this court review the valuation of the Missouri Assets upon which the prepetition tax assessment is based. It is a misnomer to label this portion of plaintiff's motion as one seeking summary judgment, for what plaintiff says it wants is for this court, in the course of trial of issues remaining after the present motion, to review the property valuation upon which prepetition taxes were based. Plaintiff suggests that the valuation is too high, because the Missouri Assets actually sold in an arms-length transaction for $750,000.00, while the valuation for tax purposes was $2 million. The court notes, however, that the tax valuation for prepetition taxes occurred prior to the filing of the bankruptcy case on September 19, 1991, while the sale of the Missouri Assets occurred June 30,

1993. In any event, here plaintiff seeks relief in the nature of an in limine motion, and is in effect soliciting the view of the court as to whether it will, pursuant to 11 U.S.C. § 505, adjudicate the valuation employed by the Missouri tax authorities.

■ Plaintiff points out that factors considered by courts in deciding whether to undertake a § 505 tax review include:

> (1) Complexity of tax issues to be decided;
>
> (2) Need to administer bankruptcy case in orderly and efficient manner;
>
> (3) Burden on bankruptcy court's docket;
>
> (4) Length of time required for trial and decision;
>
> (5) Asset and liability structure of debtor; and
>
> (6) Prejudice to debtor and potential prejudice to taxing authority.

*In re Galvano,* 116 B.R. 367 (Bankr.E.D.N.Y. 1990).

The City and Ralls County accept that this is an authoritative statement for purposes of determining whether this court should consider the issue of the amount of tax liability on prepetition tax claims.

■ In approaching the question, the parties have left us uninformed as to whether there is available in Missouri any avenue for review of the questioned tax assessment. Further, plaintiff is asking this bankruptcy court in Ohio to adjudicate valuation of real property in Missouri. While plaintiff contends that the tax issue involved is not complex because all that is involved is the valuation of the Missouri assets, that view is inadequate. That is so because:

> The valuation of property for purposes of determining property taxes must be consistent with state law principles, as the valuation is merely part and parcel of the adjudication of the tax due and owing, a question controlled by state law. The valuation law with which bankruptcy courts are most familiar (that arising out of Section 506(a) and the case law which construes the application of that section) does not here apply. Instead, the bankruptcy court gives full faith and credit to the law of the state upon which the tax is based. *Arkansas Corp. Commission v. Thompson,*

313 U.S. 132, 142, 61 S.Ct. 888, 891, 85 L.Ed. 1244 (1941) ("manifestly, whether or not taxes are 'legally due and owing' to a state depends upon the valid laws of the state"); *In re Pine Knob Investments,* 20 B.R. 714, 716 (Bankr.E.D.Mich.1982); *see In re Ishpeming Hotel Co.,* 70 B.R. 629, 633 (Bankr.W.D.Mich.1986).

*In re Fairchild Aircraft Corp.,* 124 B.R. 488, 492–93 (Bankr.W.D.Tex.1991).

*Galvano* makes relevant another consideration. In the present case, applying the fifth element of the *Galvano* test, the "asset and liability structure of debtor", it seems assured that all recoveries by the debtor-in-possession will be applied to the overwhelming secured claim of SPBC. That is, the realization of assets for the present bankruptcy estate will not be devoted to distribution to general creditors.

It is the conclusion of this court that since complex issues of tax valuation under Missouri law are involved, benefit to only a single secured creditor is in question, and there would be serious prejudice to the Missouri taxing authorities in establishing valuation of Missouri real property assets in an Ohio court, this court should abstain from the § 505 review requested. *See Arkansas Corp. Commission v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941).

■ 3. *Interest Rate.* In its motion for summary judgment, plaintiff raises a question about the interest rate to be applied postpetition to tax claims by the City and Ralls County upon which a lien arose prepetition. Plaintiff does not dispute that the City and Ralls County are entitled to interest postpetition on such claims, but does place in issue the propriety of charging interest at the rate of 18%, that provided by the Missouri property tax statute. Plaintiff asks that postpetition interest on prepetition tax obligations be allowed only at the federal judgment rate. It is clear from 11 U.S.C. § 505 that this court can exercise discretion as to what interest rate ought to be allowed in circumstances such as the present.

■ Standards for the exercise of that discretion emerge from the decided cases. First, the determination must be made on a

case-by-case basis. As the court in *Wasserman v. City of Cambridge*, 151 B.R. 4, 5 (D.Mass.1993), relying upon *In re Laymon*, 958 F.2d 72 (5th Cir.1992), *cert. denied, Crozier v. Bradford*, —— U.S. ——, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992), said:

> To make that determination, a court must examine the equities and determine the post-petition interest rate in light of the facts of the particular case.

In *Wasserman*, the court determined that the federal tax rate should be used, because there would be a distribution to unsecured creditors, and in order to do fairness to all creditors, the court concluded that the statutory rate should be reduced.

The facts of the instant case are entirely different. There will be no distribution to unsecured creditors. The only distributee from the estate will be SPBC, which holds a secured claim far in excess of any possible resource of this bankruptcy estate. In those circumstances, we see no reason why this creditor should be allowed to deprive the tax claimants of their statutory due.

Accordingly, summary judgment on the objection of plaintiff to the statutory interest rate on prepetition tax claims will be denied.

■ 4. *Penalties.* Finally, plaintiff argues that postpetition penalties, costs, or other charges on prepetition tax claims should be disallowed. To base this contention, plaintiff relies squarely upon *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Ron Pair*, the Supreme Court expressly said that "in the absence of an agreement, postpetition interest is the only added recovery available." *Id.* at 241, 109 S.Ct. at 1030. The Supreme Court was interpreting 11 U.S.C. § 506(b) and by the quoted remark was stating its conclusion that fees, costs, or charges, apart from interest, could not be collected postpetition in the absence of an agreement. In *In re Pointer*, 952 F.2d 82 (5th Cir.1992), *cert. denied*, —— U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992), the court accepted that this was the holding in *Ron Pair*. Not only did the Fifth Circuit thereupon conclude that charges other than interest were not allowable on postpetition claims for prepetition taxes, but it marshalled other authority supportive of its conclusion. This court is persuaded that that is a correct outcome, and we will grant plaintiff's motion for summary judgment barring penalties and other charges and interest postpetition.

■ As contrary authority the City and Ralls County cite *In re Brentwood Outpatient, Ltd.*, 152 B.R. 727 (M.D.Tenn.1993), which reached a different conclusion specifically with respect to penalties postpetition, and held that they were allowable. The reasoning was that penalties are not expressly mentioned in § 506(b). We find this to be too narrow a reading of the terms "fees, costs, or charges" stated in § 506(b). "Charges" is a broad enough term to include penalties, particularly when the Supreme Court in *Ron Pair* expressly excluded from recovery anything other than postpetition interest.

Plaintiff's motion for partial summary judgment objecting to entitlement by the City and Ralls County to postpetition penalties, costs, or other charges will be sustained.

### JUDGMENT ON DECISION BY THE COURT

Plaintiff having filed a motion for partial summary judgment which motion came on for consideration by the court, Honorable Burton Perlman, United States Bankruptcy Judge, presiding, and the issues having been duly considered and a decision having been rendered,

It is Ordered and Adjudged that:

1. Security Pacific Business Credit (SPBC) has a valid properly perfected lien in real property and equipment located in the City of Hannibal, Ralls County, Missouri;

2. Said lien is prior and superior to those of USX Steel, Armco Steel, Hubbel Steel and Bross Trucking, Inc.;

3. The liens for postpetition taxes of the City of Hannibal and Ralls County, Missouri, are invalid and in any case subordinate to the lien of SPBC:

4. This court abstains from determining the amount due for prepetition taxes of the City of Hannibal and Ralls County, Missouri;

5.  Summary judgment on the objection to the statutory interest rate on prepetition tax claims is denied; and

6.  Summary judgment on the objection to postpetition penalties, costs, or other charges for tax claims is granted and the objection is sustained.